# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00498-SCT

*MILTON STEPHENS, HELEN S. STEPHENS AND*
*HENRY E. PALMER*
*v.*

*THE EQUITABLE LIFE ASSURANCE SOCIETY OF*
*THE UNITED STATES AND GEORGE C. BELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/5/2002 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | PRECIOUS TYRONE MARTIN |
| ATTORNEYS FOR APPELLEES: | ROBERT L. GIBBS |
| | ANNE CLARKE SANDERS |
| | AMY MANDERSON KLOTZ |
| | CLAIRE W. KETNER |
| | SHELDON G. ALSTON |
| | DAVID A. BARFIELD |
| | ANDREA LA'VERNE FORD EDNEY |
| | LARA A. COLEMAN |
| | RICHARD D. GAMBLIN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 03/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     This case involves a claim of alleged fraud and oral misrepresentations of certain life insurance policies issued in 1972.[1] The policies had alleged "vanishing premiums." The issue before this Court concerns whether the trial court correctly dismissed the suit pursuant to the statutes of limitation.

¶2.     On November 26, 2001, the plaintiffs Milton Stephens and Helen S. Stephens (the Stephenses) and Henry E. Palmer (Palmer) filed suit in the Circuit Court of Sunflower County, Mississippi against The Equitable Life Assurance Society of the United States (Equitable) and George C. Bell (Bell)[2], an insurance agent. A joint life insurance policy was issued to the Stephenses in June 1972. Palmer purchased an adjustable whole life policy in February 1972. The Stephenses and Palmer alleged that the insurance agent orally misrepresented certain aspects of the policies prior to the purchase of the policies. The policies were purchased by the Stephenses and Palmer in 1972. Pursuant to the complaint filed on November 20, 2001, the Stephenses continued to have the $45.10 premium per month paid by a bank draft to Equitable for their policy. As for Palmer, the complaint revealed that he was 64 years old at the time of filing the complaint in 2001 and that he continued to pay the $45.88 premium per month by bank draft to Equitable for his policy.

¶3.     Equitable filed a motion to dismiss the complaint. The Circuit Court of Sunflower County granted the motion to dismiss with prejudice. The trial court judge held that the claim was time barred by the applicable statute of limitations. The trial judge thereafter dismissed the case with prejudice pursuant to M.R.C.P. 12(b)(6). From this ruling, the plaintiffs filed an appeal to this Court.

---

1 The complaint also alleges conspiracy, suppression and omission (i.e., suppressed the truth and failed to disclose certain facts such as, but not limited to, benefits, costs, and claims in order to make an informed decision), negligence (i.e., in hiring), negligent hiring, and breach of contract. While the Stephens and Palmer allege a number of claims in their joint complaint, the appeal addresses and focuses on the issues of misrepresentation, fraud and fraudulent concealment.

2 Bell joined and adopted the grounds, arguments, and requests for relief asserted by Equitable in its brief to this Court as his own.

# FACTS

¶4.     On June 28, 1972, the Stephenses purchased a joint life insurance policy with a $10,000.00 value from Bell. The Stephenses allege that Bell orally stated that the monthly premiums would be $45.10, the policy would be fully paid in twenty (20) years and the premiums would cease at that time.  At the time of filing their brief, the Stephenses had paid over $16,200 in premiums.  The written terms of the policy stated that the premiums were payable until such time as one of the spouses died.  The Stephenses' 1972 policy provided the following specific schedule of payments:

BENEFITS AND PREMIUM TABLE

| BENEFITS | MONTHLY PREMIUM | PREMIUM PERIOD |
|---|---|---|
| LIFE INSURANCE | $45.10 | FOR JOINT LIFE |

*     *     *

THE FIRST PREMIUM IS $48.50 AND IS DUE ON OR BEFORE DELIVERY OF THE POLICY.  SUBSEQUENT PREMIUMS ARE DUE ON JUL[Y] 28, 1972 AND MONTHLY THEREAFTER DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.

Further, the policy stated that the policy and the application constituted the total contract and prohibited any oral modification or waiver of the policy terms.  The "General Provision" section of the 1972 policy stated the following:

THE CONTRACT.     This insurance is granted in consideration of payment of the required premiums.  ***This policy and the applications (copies of which are attached at issue) constitute the entire contract.***

All statements made in the applications shall be deemed representations and not warranties.  ***No statement shall avoid this policy or be used in defense of a claim unless contained in the applications.***

3

> This ***policy may not be modified, nor may any of the Equitable's rights or requirements be waived, except in writing*** signed by the President, a Vice President, the Secretary or the Treasurer of the Equitable.

(emphasis added).

¶5.     Palmer purchased an adjustable whole life policy from Equitable on February 5, 1972.  He alleged that Bell stated that if Palmer paid a monthly premium of $45.88 until he reached age 58, then the premium would be fully paid with dividends.  Palmer reached the age of 58 in 1995.  At the time of the filing of his brief, Palmer was 64 and continued to pay a monthly premium to Equitable.  The written terms of the policy stated that a monthly premium of $45.88 was  payable until age 70 and a monthly premium of $37.97 was payable thereafter.  Palmer's 1972 policy provided the following specific schedule of payments:

BENEFITS AND PREMIUMS TABLE

| BENEFITS | MONTHLY PREMIUM | PREMIUM PERIOD |
|---|---|---|
| LIFE INSURANCE | $45.88 | TO AGE 70 |
|  | $37.97 | THEREAFTER |

THE FIRST PREMIUM IS $45.88 AND IS DUE ON OR BEFORE DELIVERY OF THE POLICY. SUBSEQUENT PREMIUMS ARE DUE ON MAR[CH] 5, 1972 AND MONTHLY THEREAFTER DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.

Like the life insurance policy purchased by the Stephenses, Palmer's policy also stated that the policy and the application constituted the total contract and prohibited any oral modification or waiver of the policy terms.[3]

---

3 The written terms of the policy quoted in this opinion were part of the Stephenses' joint life insurance policy. The written terms of Palmer's policy is identical but for the singular usage of the words "application" and "copy" and corresponding verbs.

¶6. On November 26, 2001, the plaintiffs filed suit against Equitable and Bell, its authorized agent, alleging fraudulent concealment. Equitable and Bell filed motions to dismiss the complaint. The Sunflower County Circuit Court granted the motion to dismiss the complaint. From this ruling, the plaintiffs appeal to this Court.

## DISCUSSION

**Whether the trial court erred by granting the motion to dismiss the plaintiffs' complaint.**

¶7. The plaintiffs base their appeal of the trial court's ruling to grant the motion to dismiss the complaint on a three-part argument. First, they claim that the allegations set forth in the complaint easily clear the threshold and withstand a Rule 12(b)(6) motion. Second, Equitable and Bell engaged in fraudulent concealment which tolls the statute of limitations. Therefore, the trial court's dismissal based upon a bar by the statute of limitations was in error. Third, the plaintiffs claim that equitable estoppel applies. They argue that issues concerning fraudulent concealment and due diligence in the discovery of the alleged fraud are factual and generally not to be resolved on a Rule 12(b)(6) motion to dismiss.

¶8. An analysis based on whether the plaintiffs' claims are barred by the statute of limitations is of paramount importance and must be addressed by this Court prior to any examination of the issues as presented by the plaintiffs. In the event that the alleged claims by the plaintiffs withstand the applicable statute of limitations, then, and only then, is full review of the issues warranted by this Court.

## A. The Trial Court Ruling

¶9. The trial court ruled the following in pertinent part:

B. LAW IDENTIFICATION:

5

5.      The applicable statute of limitations is found in Miss. Code Anno. § 15-1-49[4], which imposes a three year limitation on claims of fraud.

6.      "A fraud claim accrues upon the completion of the sale induced by false representation, or upon the consummation of the fraud." Dunn v. Dent, 153 So. 798 (Miss. 1934).

7.      The cause of action for fraudulent concealment accrues when the person, with reasonable diligence, first knew or first should have known of the fraud. Miss. Code Anno. § 15-1-67.

## C. LEGAL APPLICATION

8.      In accordance with Dunn, the statute of limitations on all Plaintiff's fraud claims ran in 1975 for the Plaintiffs.

9.      Additionally, assuming that everything the Plaintiffs say is true, in accordance with Peters v. Metropolitan Life, 164 F.Supp.2d. 830, 837 (S.D.Miss. 2001), at the very latest, the Stephens would have had knowledge of the misrepresentation in 1992 when they were required to pay additional premiums after twenty years, and Palmer would have had notice when he turned 58 yeas old and was required to continue to pay premiums. In both instances, more than three years has passed.

Based on this reasoning, the trial court dismissed the complaint in favor of Equitable and Bell.

## B.  Statute of Limitations

¶10.    "This Court uses a de novo standard of review when passing on questions of law including statute of limitations issues." *ABC Mfg. Corp. v. Doyle*, 749 So.2d 43, 45 (Miss. 1999)(citing *Ellis v. Anderson Tully Co.*, 727 So.2d 716, 718 (Miss.1998)). *See also Sarris v. Smith*, 782 So.2d 721, 723 (Miss. 2001).

### 1.      Statute of limitations, Miss. Code Ann. § 722 (1972) and Miss. Code Ann.  § 15-1-49

¶11.    In 1972, Miss. Code Ann. § 722, the applicable statute of limitations for actions without a prescribed period, provided:

---

4 § 15-1-49 and § 15-1-67 will be addressed more fully in the rationale.

> All actions for which no other period of limitations is prescribed shall be commence within six years next after the cause of such action accrued and not after.

In 1989, Miss. Code Ann. § 15-1-49, derived from Miss. Code Ann. § 722 (1972), reduced the six-year statute of limitations to a three-year period. *See* 1989 Miss. Laws, ch. 311, § 3. In 1990 further amendments were made to § 15-1-49. *See* 1990 Miss. Laws, ch. 348, § 1, eff. from and after passage (approved March 12, 1990).

¶12. Now, in Mississippi a claim of fraud has a three-year statute of limitations in accordance with Miss. Code Ann. § 15-1-49 concerning actions without a prescribed period of limitation. The statute states the following:

(1) All actions for which **no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.**

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

Miss. Code Ann. § 15-1-49 (Rev. 1995).

¶13. In *Dunn v. Dent*, 169 Miss. 574, 153 So. 798 (1934), this Court addressed the issue of alleged fraudulent concealment of the amount of conveyed property. This Court held that "the purchaser's right of action for such deceit accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud...." *Id*. Furthermore, this Court has held that whether an insured reads the entire insurance policy, the "knowledge of its contents would be imputed to them as a matter of law." *Cherry v. Anthony*, 501 So.2d 416, 419 (Miss. 1987)(citing *Atlas Roofing Mfg. Co., v. Robinson & Julienne, Inc.*, 279 So.2d 625, 629 (Miss. 1973)).

¶14. This Court has held that:

> [A] written contract cannot be varied by prior oral agreements. Moreover, as an evidentiary matter, parol evidence to vary the terms of a written contract is inadmissible. Finally, a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.

*Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.*, 584 So.2d 1254, 1257 (Miss.1991)(citations omitted).

¶15. The plaintiffs purchased their insurance policies in 1972. They filed a lawsuit in 2001, approximately 29 years after the date of purchase. As Mississippi case law provides, insureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy. *Cherry*, 501 So.2d at 419. Any alleged oral agreement in this case does not have any effect on the written insurance contract. *Godfrey*, 584 So.2d at 1257. The terms of the policy, as outlined above, unambiguously state that the Stephenses' premium was payable for the joint-life of the spouses, i.e., until such time as one of the spouses died. The unambiguous, written terms of Palmer's policy stated that a monthly premium of $45.88 was payable until he reached age 70 and a monthly premium of $37.97 was payable thereafter. Both policies also had a general provision that unambiguously prohibited any oral modification to the insurance policies.

¶16. This Court finds that the trial court was correct in its ruling that the plaintiffs were barred by the statute of limitations for fraud. The purchase of the policies were made in 1972; thus the causes of action accrued in 1972. *See Dunn v. Dent*, 169 Miss. 574, 153 So. 798 (1934). However, the trial court incorrectly applied a three-year statute of limitation pursuant to Miss. Code Ann. § 15-1-49 and found that the claim ran in 1975. In 1972 Miss. Code Ann. § 722 then provided for a six-year catch all statute of limitations for actions without a prescribed period of limitations. Consequently, the statute of limitations on

8

the plaintiffs' claims ran in 1978, not 1975 as the trial court determined in its findings. Regardless of the trial court's incorrect application of a three year statute of limitation instead of the then applicable 1972 six year statute of limitation, the outcome is the same. The causes of action accrued in 1972, and the statute of limitations ran in 1978. The plaintiffs did not file suit until 2001 well outside of the statute of limitations.

## 2. Fraudulent concealment and the statute of limitations, Miss. Code Ann. § 15-1-67.

¶17. In cases concerning a claim of fraudulent concealment, Miss. Code Ann. § 15-1-67 (Rev. 1995) is applicable. Miss. Code Ann. § 15-1-67 states the following:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

¶18. This Court has recently addressed the issue of the tolling of statutes of limitation for fraudulent concealment pursuant to Miss. Code Ann. § 15-1-67 and the evidence required to prove such a claim. In *Robinson v. Cobb*, 763 So.2d 883, 887 (Miss. 2000), this Court held:

> Further, "[f]raudulent concealment of a cause of action tolls its statute of limitations." *Myers v. Guardian Life Ins. Co. of America, Inc.*, 5 F.Supp.2d 423, 431 (N.D.Miss.1998). The fraudulent concealment doctrine "applies to any cause of action." *Id.* Robinson and Johnson claim that Cobb actively concealed his involvement in the fatal wreck, thereby allowing the fraudulent concealment exception to toll the running of the statute of limitations.
>
> In order to establish fraudulent concealment, "there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim."*Reich v. Jesco, Inc.*, 526 So.2d 550, 552 (Miss.1988). Robinson and Johnson must first prove that Cobb "engaged in affirmative acts of concealment." *In re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1030 (N.D.Miss.1993). Robinson and Johnson must also prove that even though they acted with due diligence in attempting to discover Cobb's role in the accident, they were unable to do so. *Wilson v. Retail Credit Co.*, 325 F.Supp. 460, 465 (S.D.Miss.1971), aff'd on other grounds, 457 F.2d 1406 (5 th Cir.1972).

9

Accordingly, the plaintiffs have a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was preformed on their part to discover it.

¶19.   In *Peters v. Metropolitan Life Ins. Co.*, 164 F. Supp. 2d 830 (S.D. Miss. 2001), the federal district court applied Mississippi law to an insurance case similar to the case sub judice.  In *Peters,* the federal court addressed allegations of fraudulent misrepresentation and fraudulent concealment on whole life insurance policies.  That court held the following:

> In the case of plaintiff Faucett, he alleges that agent Holmes represented to him that he would be required to pay premiums for ten to twelve years, and no longer. Thus, at the most, he thought he was required to pay premiums for 12 years from 1983, or sometime in 1995. When he was required to pay premiums after that time, he knew of the fraud, and had three years to bring suit. He did not bring this action until November 28, 2000. Thus, his claim is time-barred.
>
> In the case of plaintiff Bonney, he alleges only that he paid the first year's premium of $2,075.40, that the representations made to him by agent Quinn were in late 1988 and early 1989, and that he was told he would owe no further premiums. Like Faucett, Bonney does not offer the Court any facts concerning how he learned of the misrepresentation. The Court can only conclude that Bonney should have discovered the alleged fraud sometime in 1990, when his second annual premium became due, and that he had either three or six years to bring suit, depending on the date. In either case, his claim filed on November 28, 2000, is time-barred.

*Id*. at 838-39.

¶20.   The plaintiffs all had the written insurance policies.  The policies were unambiguous and clearly stated the terms of payment.  There was no affirmative act to prevent discovery, the terms were written into the policy. The plaintiffs' own complaint alleged that the oral representations were made in 1972.  The plaintiffs continued paying policy premiums after the date that the policy premiums allegedly should have ceased in 1992 and 1995.  Accordingly, by the plaintiffs' own allegations, the claims are barred by the statute of limitations.

¶21.     The plaintiffs however, rely on a number of federal cases, ***Phillips v. New England Mut. Life Ins. Co.***, 36 F. Supp. 2d 345, 348 (S.D. Miss. 1998); ***Hignite v. Am. Gen. Life & Accident Ins. Co.***, 142 F. Supp. 2d 785 (N.D. Miss. 2001); ***Myers v. Guardian Life Ins. Co. of Am., Inc.***, 5 F. Supp. 2d 423, 430-31 N.D. Miss 1998).

¶22.     In ***Myers,*** an insured sued for misrepresentations concerning "vanishing premiums" of a life insurance policy.  The plaintiffs rely on the case for the legal principle that parol testimony is inadmissible when the language of a contract is clear and unambiguous, except in the event of proof of fraud in the inducement of a written contract.  *Myers*, 5 F. Supp. 2d at 430-31.  The federal court determined that the complaint adequately pled damages, fraud and tolling of the statute of limitations. *Id*. at 429-31.  The facts pertaining to the tolling of the statute of limitations do not address whether the date in which the premium was to allegedly "vanish" had passed by the time of the filing of the complaint. *Id*. at 426.  Indeed, the court noted that Myers *had and will* continue to make premium payments for the insurance policy. *Id.*  In the case sub judice, by their own allegations, the plaintiffs all paid premiums beyond the date of the alleged "vanishing" point.  Again, the plaintiffs continued to pay premiums to Equitable for a period of more than three years after the alleged vanishing dates of 1992 and 1995. Their complaint was not filed until 2001, thus the Stephenses continued payment for approximately nine (9) years and Palmer paid for approximately six (6) years after the premiums were allegedly to have vanished.

¶23.     In *Higite*, the federal district court held that the insureds pled the fraudulent concealment allegation with sufficient particularity. *Higite*, 142 F. Supp. 2d at 790.  The court did not reach the question of whether the statute of limitations applies to insureds who continued to pay premiums for more than three years after the alleged date of termination as represented by an agent.

11

¶24. In *Phillips*, the federal court ruled on another vanishing premium insurance case. The plaintiffs rely on the court's holding concerning due diligence, the characterization of the case and notice. The court held:

> [W]hether plaintiffs were on notice that the premiums were "not guaranteed to vanish" is not the question at all. Rather the inquiry is whether the plaintiffs were on notice of the alleged "inflated dividend assumptions," and "artificial actuarial computations."

*Phillips*, 36 F. Supp. 2d at 350. Accordingly, the federal district court did not know if the state court could answer the question in the affirmative. *Id*. The plaintiffs claim that there is a genuine issue of material fact concerning the exercise of due diligence in this case. They claim that the although the premiums were paid via bank draft, they did not know that the agent's representations were false and that there was anything but a mistake.

¶25. The facts in *Phillips* are distinguishable from the case sub judice. The Phillipses bought policies in 1982 and 1987. *Phillips*, 36 F. Supp. 2d at 349. In November 1995, the Phillipses learned of alleged "actuarial manipulations" and "inflated dividend assumptions." *Id*. The Phillipses thereafter filed their complaint in April 1998. *Id*. Thus, the Phillipses filed a claim within three years of learning of the alleged fraudulent concealment. The plaintiffs here, on the other hand, waited over nine years and over six years respectively to file their claims once the premiums were to have vanished.

¶26. This Court finds that the trial court did not err by barring the claims pursuant to the statute of limitations and dismissing of the complaint. The plaintiffs filed a fraud claim more than 29 years after the purchase of the insurance policies. As for this Court's analysis pertaining to fraudulent concealment, the insureds knew in 1992 and 1995 respectively, that their policies should have ceased or "vanished" according to their own allegations concerning the agent's representations. Yet, the insureds waited until 2001 to file suit. Accordingly, the plaintiffs' claims are barred by the statute of limitations. The trial court

12

correctly determined that the claims were barred pursuant to the statute of limitations and *Dunn* and *Peters*.

¶27.    Since we find that the trial court correctly determined that the claim was barred by the statutes of limitation and correctly dismissed the lawsuit, this Court need not address any other issues outlined in the legal briefs.

## CONCLUSION

¶28.    For the foregoing reasons, the judgment of the Sunflower County Circuit Court is affirmed.

¶29.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR.   DIAZ, J., CONCURS IN RESULT ONLY.   McRAE, P.J., NOT PARTICIPATING.**