**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-IA-01842-SCT**

*BETTY ANDRUS, KEITH BARRETT, DEBERA BRIDGES, GARY COLEMAN AND PHILLIP PRICE*

*v.*

*CHARLIE C. ELLIS, SAMMY HANCOCK, AZZIE MAE STARR AND WANDA N. WOODS*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2003 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | H. MITCHELL COWAN |
| | VIKKI J. TAYLOR |
| | JOHN R. CHILES |
| | REID STEPHENS MANLEY |
| | ROBERT D. GHOLSON |
| | MARCUS DOUGLAS EVANS |
| ATTORNEYS FOR APPELLEES: | T. ROE FRAZER |
| | F. LEE BOWIE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 11/04/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     On March 22, 2002, several Plaintiffs[1] filed suit against eight individual Defendants claiming that the Defendants fraudulently induced them to purchase credit insurance policies in connection with consumer loans made by Commercial Credit Corporation. Plaintiffs allege either that they were not aware that they

---

[1]Several original Plaintiffs' claims were dismissed based on a binding arbitration clause.

had purchased credit insurance, or they were aware, but thought such was required to obtain the loans. All Defendants are either current or former employees of Commercial Credit, which is now known as CitiFinancial, Inc. Plaintiffs did not sue Commercial Credit.

¶2. Following discovery, Defendants filed two motions: one to sever and transfer and the other for summary judgment. A hearing before the circuit court was held regarding both. Both motions and Defendants' subsequent motion for interlocutory appeal certification were denied. On August 21, 2003, this Court granted Defendants' motion for emergency stay and request for interlocutory appeal. See M.R.A.P. 5. No brief has been submitted on the Plaintiffs' behalf.

¶3. Finding that the claims are barred by Miss. Code Ann. § 15-1-49 (Rev. 2003), this Court reverses and renders the trial court's denial of summary judgment.

**FACTS**

¶4. Plaintiffs jointly commenced this action alleging that the Defendants fraudulently and negligently induced them to purchase various types of credit insurance in connection with their loans.[2] The transactions at issue are independent of each other, and all occurred from 1988 to 1995 while the Defendants were employees of Commercial Credit.

¶5. The facts surrounding the Plaintiffs' loans are as follows:

*Charles C. Ellis*

---

[2]The types of credit insurance involved credit life, disability or property.

2

¶6.     Ellis's claim is based on two loans and against Defendants Coleman and Andrus, former employees of Commercial Credit. Both loans were transacted at the Hattiesburg office of Commercial Credit. Ellis contracted for credit life and credit disability insurance in connection to both loans.

¶7.     The first loan was prepared by Coleman and agreed to on August 1, 1991. Ellis testified that he believed the credit insurance was required but only remembered it being recommended to him or suggested that "he needed it." Ellis received copies of the documents resulting from the transaction, which he kept at home. Ellis testified that he read part of the document, but he did not remember reading the insurance disclosure. He testified that had he read the documents he would have known that the insurance was not required. There was no testimony that after receiving the loan he had any further contact with the Defendants regarding the loan or insurance.

¶8.     The second loan was on January 16, 1993. Ellis was unsure who solicited him but he alleged that it was either Defendant Andrus or Boleware. This loan was wholly separate from the 1991 loan, which at this time was paid off. During his deposition, Ellis stated that he wanted credit insurance in case something happened to him and that is why he accepted it. There was no testimony that after receiving the loan he had any further contact with the Defendants regarding the loan or insurance.

*Sammy Hancock*

¶9.     Hancock received several loans from Commercial Credit. He admitted that he requested credit disability insurance in connection to each loan, but claimed that he was unaware that he also contracted for credit life and property insurance. He testified that there was no discussion between him and the employees

3

of Commercial Credit concerning credit life and property insurance. Hancock actually collected disability benefits under the coverage he purchased. As a result of these benefits, his loan was paid in full. Hancock can read and received copies of the loan documents, which he kept at home.

¶10. Hancock's first loan was on June 23, 1993, and was prepared by Defendant Bridges-Pankowski. He claims that Bridges-Pankowski never told him that he was purchasing credit life and property insurance in connection to this loan. He testified that he only requested credit disability.

¶11. Hancock's next loan was on October 4, 1993, and again handled by Defendant Bridges-Pankowski. Hancock admitted that during this transaction he knew that he was purchasing credit life and property insurance. He testified that he reviewed the documents at home following the transaction. He made no objections.

¶12. Hancock renewed this loan on November 25, 1994. It is unclear which Commercial Credit employee handled the transaction. Hancock testified that he again was aware that he was purchasing credit life and property insurance and that he assumed the loan was being renewed under the same terms. Hancock did not remember any discussion between him and employees of Commercial Credit regarding insurance.

¶13. The final transaction was on August 23, 1995, when Hancock renewed the previous loan. Again, he was aware that he had credit disability, life and property coverage. His recollection was that he became aware of this after he reviewed the documents several weeks later.

*Azzie Mae Starr*

¶14. Starr obtained a loan on November 8, 1995. Her claim is against Defendant Moss. Starr purchased only property insurance and paid a one-time fee. Starr testified that she remembered being told

that she needed to get property insurance.  Starr testified that she read the loan documents, which she saved at home.  She never objected to the insurance.  Starr did not know she was suing individual Defendants and did not recall anything that employees at Commercial Credit told her was untrue.

*Wanda Woods*

¶15.    The claims of Woods and her husband were against Defendants Barrett and Coleman.[3]  She obtained three loans, with the first being on November 20, 1988.  As collateral for this loan, Woods pledged her mobile home.  Woods believed that she had bought credit health insurance, not life or disability, in connection with her loan.  She thought credit insurance was required to receive the loan.  She does not remember who prepared the loan, and none of the named Defendants signed the documents in connection with the loan.

¶16.    Her second loan was obtained on August 13, 1990.  With a one time premium, she purchased credit life insurance in connection to this loan.  Though she could not remember who, Woods testified that an employee represented to her that she was purchasing health insurance which was required.  Woods signed beside the disclosure of credit life premium on the promissory note and disclosure statement.  Also, contained in the loan agreement was a disclosure statement informing her that credit insurance was optional.  Woods testified that she understood the disclosure statement and that the loan agreement indicated that credit insurance was not mandatory.

¶17.    Woods's second loan was on February 17, 1994.  Woods does not remember which employee handled this loan, though Defendants Barrett and Coleman signed the loan documents.  She purchased joint

_____

[3]Based on the fact that Woods's husband was listed as a co-borrower, he joined the complaint.

credit life insurance in connection with this loan. Though her signature appears on the note next to the disclosure, Woods testified that no one informed her that she was purchasing life insurance. Woods admitted that she never read the documents, even though she received copies of the documents and kept them at home.

¶18. Because she believed that she had health insurance, Woods attempted to make a claim on her insurance in 1990 and 1991. At this time, she was informed that she only had credit life insurance, not health.

¶19. Woods has satisfied her obligations under the loans. Woods believed that she was suing Commercial Credit and not individual Defendants. She could not recall anything that Defendants Barrett and Coleman told her about her loans.

## ANALYSIS

¶20. Defendants raise the following issues:

    **I.**     **Are the Claims Barred by the Statute of Limitations.**
    **II.**     **Did the Circuit Court Err When it Denied the Defendants' Motion for Summary Judgment on Plaintiffs' claims for Fraudulent and Negligent Misrepresentation.**
    **III.**     **Did the Circuit Court Err When it Denied the Defendants' Motion for Summary Judgment on Punitive and Emotional Distress Damages.**
    **III.**     **Should the Plaintiffs' Claims be Severed in Accordance with M.R.C.P. 21 and Transferred to the Proper Venue.**

¶21. Because it is dispositive, we address only the statute of limitations issue.

    **I.**     **Statute of Limitations**

¶22. It is undisputed that the three-year statute of limitations set forth in Miss. Code Ann. § 15-1-49 (Rev. 2003) is controlling in the instant case. *See Stephens v. Equitable Life Assurance Soc'y of*

6

*the United States*, 850 So.2d 78 (Miss. 2003); *Am. Bankers Ins. Co. of Florida v. Wells*, 819 So.2d 1196 (Miss. 2001). Section 15-1-49 provides in part:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

This Court employs de novo review when considering issues of law such as statutes of limitations. *Stephens*, 850 So.2d at 82.

¶23. The trial court provided no reasons as to why it denied summary judgment based on the statute of limitations. Seemingly, the application and resulting bar under § 15-1-49 is certain. The most recent loan transaction at issue occurred in 1995. With filing of the complaint occurring on March 22, 2002, the statute would bar all claims that accrued prior to March 22, 1999. Thus, in the absence of an exception, statutory or otherwise, the claims are barred.

¶24. As noted, no brief was filed on behalf of the Plaintiffs. In situations such as this, the Court may consider the failure as a confession of error and reverse. *Miller v. Pannell*, 815 So.2d 1117, 1119 (Miss. 2002). This is done when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. *Id*. (citing *May v. May*, 297 So.2d 912, 913 (Miss.1974)). Though this failure alone is sufficient to warrant reversal, we consider the merits.

¶25. The Plaintiffs allege fraudulent and negligent misrepresentation and fraudulent inducement. Much of the Plaintiffs' argument relies on the fact that Commercial Credit is not a party to the proceedings. In addition to the allegations that they were either not aware that they had purchased credit insurance or were

7

misled into believing that it was necessary, the Plaintiffs alleged that the Defendants failed to disclose that they received a commission from the sale of credit insurance.

¶26.    The Plaintiffs reject any argument in which the Defendants rely on the written agreements entered into by Commercial Credit and the Plaintiffs. This position is based on the fact that the protective language therein does not specifically include the individual Defendants. The Plaintiffs believe the agreements are limited in that they can only be applied to Commercial Credit and thus cannot be used as a defense by an employee who, contrary to company policy, used illicit tactics to sell insurance. Plaintiffs entered into the record, excerpts from a sales training book and a branch manual distributed by Commercial Credit. The Plaintiffs rely on these excerpts to support their claim that the Defendants breached the standard of care as set forth by Commercial Credit and which as employees they were obligated to follow.

¶27.    As to the issue of the statutory bar, there are two cases, *Wells* and *Stephens*, that we consider. In *American Bankers' Ins. Co. of Florida v. Wells*, 819 So.2d 1196 (Miss. 2001), this Court discussed possible exceptions that would support the tolling of § 15-1-49. Focusing on alleged backdating of force-placed insurance coverage, the Court ruled that the test on whether to toll the statute of limitations is whether a reasonable person similarly situated would have discovered potential claims. *Id*. at 1201. The plaintiffs in *Wells* alleged that the banks committed fraud by backdating and charging borrowers insurance premiums from the date their other insurance lapsed rather than from the date that force-placed coverage actually began.    After confirming that the promissory notes did not authorize the lender to backdate coverage, and thus that the plaintiffs had actionable claims, the Court considered if and when the two plaintiffs received notice of the backdating. *Id*. at 1202. As to the first plaintiff, the Court found that based

8

on the fact that she denied ever receiving notice of the force-placed coverage and based on the fact that there was no testimony that she indeed ever received such, the statute of limitations was tolled until the time at which she first received notice of the backdating. *Id*. In that instance, the Court assumed it to be during discovery. *Id*. As to the second plaintiff, the Court ruled that he received notice, in the form of certificates of insurance, each time force-placed insurance was issued. *Id*. Based on the fact that he received notice more than three years before the filing of the complaint, the Court found his claim to be barred. *Id*.

¶28. Applying *Wells*, the claims in the instant case are barred. Like the second plaintiff in *Wells*, here all the Plaintiffs were on notice. All Plaintiffs testified during their depositions that they received copies of the loan documents. It is undisputed that contained in each loan agreement was an insurance disclosure which informed the borrower that credit insurance was not required and that the decision to make the loan would not be affected by the borrower's decision. "In Mississippi, a person is charged with knowing the contents of any document that he executes." *Russell v. Performance Toyota, Inc.*, 826 So.2d 719, 725 (Miss. 2002) (citing *J.R. Watkins Co. v. Runnels*, 252 Miss. 87, 172 So.2d 567, 571 (1965) ("A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him.")). "[A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,* 584 So.2d 1254, 1257 (Miss. 1991). Accordingly, the Plaintiffs are charged with notice and therefore all claims accrued at the time the loan agreements were executed.

9

Plaintiffs cannot rely on the fact that Commercial Credit is not a party to the action in order to circumvent the unambiguous language of the loan agreement or to avoid being charged with notice.

¶29.    In the other case, this Court considered § 15-1-49 and statutory exceptions thereto. *See Stephens v. Equitable LifeAssur. Soc'y*, 850 So.2d 78 (Miss. 2003) (relied on in *Ross v. CitiFinancial, Inc.*, 344 F.3d 458 (5th. Cir. 2003)). In *Stephens*, the plaintiffs sued Equitable Life and its agent based on theories of fraudulent misrepresentation and concealment. Plaintiffs alleged that while purchasing life insurance in 1972 they were misled regarding the amount and duration of premiums. *Id*. at 79. Considering the fraud claim first, the Court held that the claims accrued in 1972 when the insurance was purchased. *Id*. at 83. Because the complaint was not filed until 2001, the claims were barred under the applicable statute of limitations.[4] *Id*. The Court stated that under this Court's precedent, insureds are charged with knowledge of the contents of written agreements notwithstanding whether they actually read such agreement. *Id*.

¶30.    The Court then considered § 15-1-67, which provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code Ann. § 15-1-67 (Rev. 2003). Under the doctrine of fraudulent concealment, the running of the statute of limitations is tolled. *Stephens*, 850 So.2d at 83 (quoting *Robinson v. Cobb*, 763 So.2d 883, 887 (Miss. 2000)). This requires proof of two elements: subsequent affirmative acts of concealment and

---

[4]The current three-year statute of limitations in Section 15-1-49 was not applicable in 1972. *Id*. at 83. This required the Court to apply the then-applicable six-year catchall statute of limitations.

due diligence. That is, there must be some subsequent affirmative act by the defendant which was designed to prevent and which did prevent discovery of the claim. *Stephens*, 850 So.2d at 83-84. Proof of this act must also be coupled with proof that despite his or her due diligence, the plaintiff was unable to discover the claim. *Id*. Here, Plaintiffs fail as to both elements.

¶31.    There are no specific charges of subsequent affirmative acts of concealment contained in either the record or the testimony of the Plaintiffs. Aside from the broad allegations contained in the complaint, only Plaintiff Woods positively asserts that the nature of the coverage was misrepresented to her. Assuming arguendo that this satisfies the affirmative act requirement, based on her testimony it is certain that she is unable to satisfy the due diligence requirement. She was informed as early as 1991 that she did not have health insurance. At this point, diligence requires Woods to either object or inquire as to why her understanding of the insurance contract fundamentally differs from Commercial Credit's understanding. However, Woods testified that she never read the loan documents and the record indicates that, subsequent to this denial, she returned to Commercial Credit for another loan. Based on this, Woods is precluded from relying on the doctrine of fraudulent concealment.

¶32.    Woods's testimony aside, the testimony of the remaining Plaintiffs does not support the proposition that the Defendants committed any affirmative acts. The other Plaintiffs testified generally that their understanding of the transaction was contrary to the unambiguous terms contained in the written contract. None testified that the defendants made any oral misrepresentation, much less subsequent acts of concealment.

¶33.    As for due diligence, all Plaintiffs received copies of the loan documents. Save Plaintiff Woods, all admitted that to some extent they reviewed the loan documents. Yet, despite the unambiguous language,

11

none testified as to why they failed to object or inquire further regarding the fact that their understanding of the transaction differed from the insurance disclosure. None raised an objection to the insurance until the filing of the complaint.

¶34.    As to the alleged failure to disclose commissions, the Court finds this argument without merit. In the course of a private transaction where the seller encourages a buyer to purchase additional products, one would assume that the seller is motivated by some sort of incentive such as, in this instance, a commission. There is no testimony that the Defendants concealed or denied that they were receiving commissions nor is there any testimony regarding whether the Plaintiffs specifically inquired as to such. Likewise, there is no allegation in fact or duty under law to support the argument that the Defendants were obligated to do so. We presume that parties enter into private transactions for their own personal benefit.

## CONCLUSION

¶35.    Plaintiffs' claims are barred by § 15-1-49. There is no proof of fraudulent concealment by the Defendants, and thus the Plaintiffs may not avail themselves of the tolling mechanism provided under § 15-1-67. We reverse the circuit court's judgment and render judgment here finally dismissing plaintiffs' complaint and this action with prejudice as barred by the applicable statute of limitations.

¶36.    **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**