IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 5, 2007

Charles R. Fulbruge III
Clerk

No. 03-61007
Summary Calendar

MARION C BENTLEY

Plaintiff-Appellant

V.

MUTUAL BENEFITS CORPORATION; ET AL

Defendants

O B GILTNER

Defendant-Appellee

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 4:02-CV-122

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Marion C. Bentley ("Bentley") appeals the district court's grant of defendants' motion for summary judgment. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

In 1991, Bentley's aunt purchased a $100,000 Mutual of New York ("MONY") life insurance policy from O.B. Giltner ("Giltner"), an insurance agent. Bentley was the sole beneficiary of this policy, and when Bentley's aunt died on January 22, 1997, he contacted Giltner to request the insurance proceeds. In March 1997, MONY tendered $100,000 to Giltner, who deposited the funds in a money market account in Bentley's name. After receiving control of the proceeds, Bentley wrote to Giltner and asked him for investment advice. Bentley also alleges that Giltner solicited him for his investment business. In May 1997, Giltner, who was also a contract agent for Mutual Benefits Corporation ("MBC"), a viatical company, contacted Bentley and recommended that he invest in a viatical settlement from MBC.[1] Giltner allegedly promised Bentley that, under a three-year viatical settlement, he would receive a 42% return on his investment. Following this conversation, Giltner mailed Bentley information on viatical settlements and MBC, a suitability questionnaire, a Purchase Agreement, a Trust Agreement, and other related forms. Two or three days after he received these documents, Bentley decided to invest $25,000 in a three-year MBC viatical settlement, with the expectation that he would reap a 42% return and thus receive $35,500 at or within three years. Bentley only decided to invest $25,000 instead of the full $100,000 because he was "unsure and uneasy about the prospect of investing his money in a 'viatical settlement.'"

---

[1] The Eleventh Circuit described the viatical settlement investment as follows: A viatical settlement is a transaction in which a terminally ill insured sells the benefits of his life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value. The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchase price, adjusted for time value. Thus, in purchasing a viatical settlement, it is of paramount importance that an accurate determination be made of the insured's expected date of death. If the insured lives longer than expected, the purchaser of the policy will realize a reduced return, or may lose money on the investment. S.E.C. v. Mut. Benefits Corp., 408 F.3d 737, 738 (11th Cir. 2005).

On May 27, 1997, Bentley executed the documents required to purchase the viatical settlement from MBC. Bentley signed the Purchase Agreement, which stated that he "desire[d] to purchase one or more discounted life insurance policies of terminally ill persons." The agreement also provided:

## I. AMOUNT OF PURCHASE

1) The Purchaser hereby agrees to deposit the sum of Twenty Five Thousand Dollars ($25,000.00) with Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, the Escrow Agent, for the purpose of acquiring a life insurance policy(ies) which will be allocated according to the Addendum attached hereto.

2) The Purchaser will receive payment upon the maturity of the life insurance policy(ies) directly from the insurance company(ies) that has issued the policy(ies).

3) Policies are priced to generate a fixed return which varies depending on the life expectancy of each insured. Returns are total returns, not annual return. The exact annual return cannot be determined until the policy matures.

The agreement prohibited any modification of the contract without the written consent of MBC. In accordance with this agreement, Bentley wrote a $25,000 check, dated May 21, 1997, payable to the Escrow Agent. On the same day, Bentley also signed the Trust Agreement, which appointed Anthony M. Livoti, Jr. ("Livoti") as trustee and provided:

The BUYER acknowledges and agrees that a certain insurance policy for which they are purchasing or purchasing an interest in, shall be titled to and held in trust by the TRUSTEE. The TRUSTEE acknowledges that upon BUYER acquiring an interest in said policy, the TRUSTEE is holding title to the policy for their benefit. Upon the death of the named insured, TRUSTEE will assist and cooperate with the BUYER in seeing that the BUYER is paid directly by the insurance company.

When the TRUSTEE is notified of the death of the insured, the TRUSTEE shall assist and cooperate in seeing the BUYER is paid directly from the insurance company.

Bentley transmitted these documents and check to Giltner, who then forwarded them to MBC.

Approximately one month later, MBC sent Bentley a letter, dated July 3, 1997, and documents, dated June 26, 1997, stating that it had purchased the $250,000 life insurance policy of Chandra Das ("Das"), a terminally ill AIDS patient with a life expectancy of 36 months, and assigned it to Livoti. It also stated that Livoti in turn had assigned a 14.2% share of the policy proceeds to Bentley.[2] On October 16, 1997, MBC mailed Bentley a copy of a June 20, 1997 letter from Dr. Clark Mitchell ("Dr. Mitchell"), confirming that the life expectancy of Das was 30 to 36 months. Das, however, did not die by the end of the 36-month period, and Bentley did not receive his return in May 2000. At this time, Bentley expressed concern about his investment to Giltner, various persons associated with MBC, and Livoti, but he did not receive any responses that satisfied him. To date, Bentley has not received a return on his investment, as Das is apparently still living.

On April 5, 2002, almost five years after purchasing the MBC viatical settlement, Bentley filed suit against MBC, Giltner, and others,[3] primarily claiming that Giltner had fraudulently induced Bentley to enter into the contract with MBC by unconditionally promising him that the viatical settlement was a safe, risk-free investment, which would pay a return of 42% at or within three years.[4] In addition to fraud, Bentley asserted claims of negligent misrepresentation, gross negligence, breach of fiduciary duties, violation of the

---

[2] Nineteen other individuals and trusts were also assigned fractional interests of Das's life insurance policy.

[3] Bentley also filed suit against Giltner & Associates, Jim Giltner, and John Does 1-10. The district court, however, granted summary judgment in favor of these parties on May 1, 2003. Bentley did not appeal that order.

[4] Bentley originally filed suit in the Circuit Court of Jasper County, Mississippi, but defendants removed the action to federal court based on diversity jurisdiction on May 9, 2002.

Mississippi Securities Act, equitable estoppel, joint venture, and vicarious liability/respondeat superior. On August 8, 2003, MBC and Giltner filed a motion for summary judgment under Federal Rule of Civil Procedure 56(c). On October 23, 2003, the district court granted defendants' motion for summary judgment, holding that Bentley's claims were time-barred under section 15-1-49 of the Mississippi Code, and entered judgment in favor of MBC and Giltner. On November 6, 2003, Bentley filed a motion to reconsider under Rules 59 and 60, which the court denied on March 9, 2004. Bentley timely filed his appeal.[5]

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005). To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

The two issues on appeal are whether Bentley's causes of action are barred by the statute of limitations, and if so, whether fraudulent concealment tolled

---

[5] Bentley filed his appeal against both Giltner and MBC. However, on May 4, 2004, the Securities and Exchange Commission forced MBC into receivership, which enjoined any further actions by or against MBC. As a result, this Court stayed Bentley's appeal. On May 21, 2007, this Court granted Bentley's motion to dismiss the appeal against MBC and dissolved the stay. Thus, the instant appeal remains pending only against Giltner.

the statute. We hold that the statute of limitations bars Bentley's causes of action and that it was not tolled.

There is no dispute between the parties that the statute of limitations contained in section 15-1-49 of the Mississippi Code is applicable in this case. That section provides that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." MISS. CODE ANN. § 15-1-49. Each party, however, has a different interpretation of when this three-year statute of limitations began to run. Bentley filed suit on April 5, 2002. Giltner argues that the statute of limitations began to run on May 27, 1997, the date that Bentley entered into the agreement with MBC to purchase the viatical settlement (or the May 1997 date that Giltner allegedly made the unconditional promise regarding the return on the investment). Under Giltner's interpretation, Bentley's claims are time-barred. On the other hand, Bentley argues that the statute of limitations began to run on the date of his actual injury.[6] Bentley argues that the date of his actual injury was May 27, 2000, the date he did not receive the return on his investment. Under Bentley's interpretation, his claims are not time-barred.

In determining when this statute of limitations begins to run, the Supreme Court of Mississippi has held that "[a] fraud claim accrues upon the completion of the sale induced by false representation, or upon the consummation of the fraud," when a plaintiff is on notice of the terms of the contract that contradict that prior representation. Stephens v. Equitable Life Assurance Soc'y of the U.S., 850 So. 2d 78, 81 (Miss. 2003) (citing Dunn v. Dent, 153 So. 2d 798, 798 (1934)); see Carter v. Citigroup Inc., 938 So. 2d 809, 817–18 (Miss. 2006); Andrus v. Ellis,

---

[6] Bentley first asserted this argument in his motion to reconsider, not at summary judgment. In his response to defendants' motion for summary judgment, Bentley assumed that the three-year statute of limitations had run because he only argued for tolling by fraudulent concealment.

6

887 So. 2d 175, 180 (Miss. 2004) (en banc). Here, the contract for the purchase of the MBC viatical settlement, which was allegedly induced by Giltner's unconditional promise that the investment would yield a return of 42% at or within a three-year period, was completed on May 27, 1997. At this time, Bentley had copies of the purchase and trust documents, which contradicted Giltner's earlier alleged promise. The terms of the Purchase Agreement dispelled any notion of a guaranteed return and clearly established that Bentley was buying an interest in a life insurance policy of a terminally ill person, that Bentley would receive a payment upon the maturity of the life insurance policy (i.e., when Das died), that returns may vary depending upon the life expectancy of the insured person, that returns were not annual returns but total returns, and that the exact return "cannot be determined until the policy matures." The Supreme Court of Mississippi has held that "[i]n Mississippi, a person is charged with knowing the contents of any document that he executes." Carter, 938 So. 2d at 818 (internal quotations omitted). Further, the court has held:

> [A] written contract cannot be varied by prior oral agreements. Moreover, as an evidentiary matter, parol evidence to vary the terms of a written contract is inadmissible. Finally, a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.

Id. (internal quotations omitted). Therefore, in accordance with Carter, Andrus, Stephens, and Dunn, we conclude that Bentley was on notice and that his claims accrued on May 27, 1997, the time he completed the purchase of the viatical settlement. Accordingly, we hold that the district court correctly found that Bentley's April 5, 2002 causes of action, which were filed nearly five years after the purchase of the viatical settlement, are time-barred.

Even though time-barred under section 15-1-49, claims "asserted three years after their accrual may [still] be actionable if they were fraudulently

concealed and [p]laintiffs could not discover them with reasonable diligence." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 463 (5th Cir. 2003). "In that event, the limitations period begins to run when the claims are discovered." *Id.* This rule is codified in section 15-1-67 of the Mississippi Code, which provides:

> [i]f a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

MISS. CODE ANN. § 15-1-67. The Supreme Court of Mississippi has held:

> [t]his [statute] requires proof of two elements: [(1)] subsequent affirmative acts of concealment and [(2)] due diligence. That is, there must be some subsequent affirmative act by the defendant which was designed to prevent and which did prevent discovery of the claim.

*Andrus*, 887 So. 2d at 181 (internal citation omitted); *see Stephens*, 850 So. 2d at 83–84. "[P]laintiffs may not merely point to an initial fraudulent statement made at the time they signed the contract. . . . [T]hey must create a question of fact with respect to an affirmative post-sale act." *Archer v. Nissan Motor Acceptance Corp.*, No. 3:03-CV-906, 2007 WL 2580321, at *5 (S.D. Miss. Sept. 4, 2007). "Proof of this [subsequent, affirmative] act must also be coupled with proof that despite his or her due diligence, the plaintiff was unable to discover the claim." *Andrus*, 887 So. 2d at 181. The burden is on the plaintiff to prove that such tolling of the statute of limitations applies under this section. *See Archer*, 2007 WL 2580321, at *5.

Here, Bentley has failed to demonstrate that the statute of limitations is tolled by fraudulent concealment. First, Bentley has not alleged that Giltner made any misrepresentation to him after he purchased the viatical settlement.[7]

---

[7] In his motion to reconsider, Bentley asserts another argument regarding fraudulent concealment, which was not made in his response to defendants' motion for summary judgment. Specifically, Bentley asserts that at the time MBC forwarded him Dr. Mitchell's

Bently only alleges that the misrepresentation occurred concurrently with the initial sale. By Bentley's own account, after Giltner received and forwarded the executed documents and check to MBC, Bentley had no further contact with Giltner until mid-2000, when Bentley inquired about his investment. Other than this initial contact, Bentley does not allege that Giltner had any other involvement with his viatical settlement. Thus, Bentley has not satisfied the "subsequent, affirmative act" prong of the fraudulent concealment test. Likewise, Bentley has failed to present evidence of due diligence in his investigation of facts which gives rise to his claims. Bentley did not investigate the viatical settlement investment, outside of his initial limited conversations with Giltner, even when the clear language of the agreement should have caused him to do so. Because of the provisions previously discussed, Bentley should have investigated the accuracy of Giltner's alleged representation that the viatical settlement would produce a guaranteed return of 42% at or within three years. By Bentley's own admission, he was suspicious of viatical settlements, given that he only invested $25,000 of his $100,000 in insurance proceeds; yet, he did not investigate. Thus, he has also not satisfied the "reasonable diligence" prong of the fraudulent concealment test. Simply making inquiries to Giltner about his investment in 2000 does not suffice. Because there is no proof of fraudulent concealment by Giltner, we hold that district court properly found

---

letter, indicating that Das had a life expectancy of 36 months, it also had in its possession a June 9, 1997 statement from Dr. Tom Hicks ("Dr. Hicks"), Das's treating physician, providing that Das suffered from "HIV manageable as a chronic disease" and that she had a life expectancy of 60 months. Bentley admits that this evidence existed at the time he responded to defendants' motion for summary judgment and should have been presented to the court, but for the excusable neglect of his attorney. The district court, however, correctly rejected this argument. Therefore, this Court need not consider Dr. Hicks's statement. Even if this Court were to consider this evidence, it only involves fraudulent concealment as to MBC, who has been dismissed from this appeal. Thus, it would not serve to toll the statute of limitations as it relates to Giltner.

that the statute of limitations was not tolled. Accordingly, we hold that Bentley's claims are time-barred.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.