# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00057-COA

**NURDAN AYDIN AND ADNAN AYDIN**                                      **APPELLANTS**

**v.**

**MARTY DANIELS AND MARTY DANIELS**                                 **APPELLEES**
**CONSTRUCTION, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2013 |
| TRIAL JUDGE: | HON. JOHN ANDREW GREGORY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | J. KEITH PEARSON |
| | SARAH LYNN DICKEY |
| ATTORNEYS FOR APPELLEES: | H. SCOT SPRAGINS |
| | LAWRENCE JOHN TUCKER JR. |
| | JASON R. HOLLINGSWORTH |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEES' MOTION TO DISMISS |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/02/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In 1995, Marty Daniels, through his company, Marty Daniels Construction LLC (collectively Daniels), built a custom home for certain property owners in Oxford, Mississippi.  During the building process, trees, shrubs, and dirt were removed from the property, thus creating a gully.  The property owners instructed Daniels to take the materials that were removed for building purposes and deposit them into the gully as opposed to hauling the materials away.  In 2010, after the home had been sold on several occasions,

Nurdan and Adnan Aydin owned the home. The Aydins claim that sinkholes began forming where the gully had been filled, which ultimately required substantial labor and repairs to be done to the property. They filed suit in the Lafayette County Circuit Court against Daniels claiming that he had fraudulently concealed the gully, which began forming sinkholes as a result of the fill material beginning to decay. Prior to trial, Daniels moved to dismiss the action as time-barred. After a hearing on the motion, the circuit court granted Daniels's request, and the action was dismissed. Aggrieved, the Aydins appeal. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. In 1995, Chris and Kathy Ross were the owners of property located in Oxford, Mississippi. The Rosses hired Daniels to custom build a home on the property. During the building process, natural materials had to be removed from the property. These materials included items such as tree stumps, tree trunks, tree limbs, and dirt, among other things. Removal of these materials created a gully on the property. After discussing the matter with Daniels, the Rosses decided that having the material hauled away would be costly and damage the home's newly paved drives. Instead, they decided to bury the materials in a gully located on the property.

¶3. The Rosses eventually sold the home. The home was, in fact, sold several times between the Rosses' ownership and the Aydins' acquisition of the property. Nonetheless, in 2010, the Aydins began noticing sinkholes forming at their residence. After hiring contractors to investigate and repair the issues, the Aydins were told that the sinkholes were

2

the result of the fill material in the gully decaying. The gully was eventually dug up, the decaying material was removed, and approximately forty truckloads of dirt were used to fill the gully. The Aydins assert that not only was their driveway destroyed, but the sinkholes caused extensive damage to the interior and exterior plumbing of the house. In addition to the costs associated with remedying and repairing the gully and the property, the Aydins also claim that they were unable to sell the property at fair market value. They claim the value of the home decreased as a result of the obvious signs of repair on the property and their requirement to disclose the extensive subsurface issues to all potential buyers.

¶4. In 2011, the Aydins filed suit against Daniels claiming that the gully and its allegedly defective fill material were fraudulently concealed. A summons was issued and served upon the corporate defendant, but one was not served upon the individual defendant. When Daniels failed to answer the complaint within the allotted time frame, the Aydins moved for a default judgment, which was granted. However, before the judgment could be entered, Daniels hired counsel, who moved to set the default judgment aside on the basis of insufficient service of process. Counsel also filed an answer to the Aydins' complaint asserting numerous affirmative defenses, including the statute of repose.

¶5. Before the circuit court could address the motions regarding the default judgment, Daniels filed a motion to dismiss citing the statute of repose as a procedural bar for the Aydins' claims. The Aydins countered that the theory of fraudulent concealment excepted the case from the statute of repose. Discovery took place over the next few years, after which time the circuit court scheduled a hearing on Daniels's motion to dismiss. The circuit court

ultimately concluded that the claims at hand were barred by the statute of repose because the Aydins failed to provide sufficient facts to support a prima facie claim of fraudulent concealment. Soon thereafter, the Aydins filed the instant appeal.

## DISCUSSION

¶6. The standard of review for analyzing a trial court's grant or denial of a motion to dismiss is well settled:

> A motion to dismiss for failure to state a claim under Mississippi Rule of Civil Procedure 12(b)(6) raises an issue of law. This Court reviews questions of law de novo. When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.

*Poindexter v. S. United Fire Ins. Co.*, 838 So. 2d 964, 966 (¶12) (Miss. 2003) (citation omitted).

¶7. The question before us is whether the Aydins provided enough information in their pleadings to show a prima facie claim of fraudulent concealment such that the statute of repose was tolled. The statute of repose is housed in Mississippi Code Annotated section 15-1-41 (Rev. 2012) and states:

> No action may be brought to recover damages for injury to property, real or personal, . . . arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm[,] or corporation performing or furnishing the design, planning, supervision of construction[,] or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof . . . .

¶8.     As noted above, the Rosses hired Daniels to build the home in question in 1995. The Rosses lived in the home for several years before selling it to another party, who, in turn, sold it to the Aydins. Regardless, the Aydins did not file suit against Daniels until 2011 – sixteen years after construction was completed and the Rosses moved into the home. Essentially, the Aydins were approximately a decade late in filing their action.

¶9.     Nonetheless, "fraudulent concealment of a cause of action tolls its statute of limitations," which would include a statute of repose. *Windham v. Latco of Miss. Inc.*, 972 So. 2d 608, 613-14 (¶9) (Miss. 2008) (citations omitted). Specifically, the Mississippi Supreme Court noted that "[i]f fraudulent concealment is proven, equity mandates that the tortfeasor be barred from benefitting from the statute of repose . . . ." *Id*. at 614 (¶9) (footnote omitted).

¶10.    Fraudulent concealment is proven under a two-part test. *Stephens v. Equitable Life Assurance Soc'y of the U.S.*, 850 So. 2d 78, 84 (¶18) (Miss. 2003). A movant must show that "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." *Id*. Furthermore, "there must be some subsequent affirmative act by the defendant which was designed to prevent and which did prevent discovery of the claim." *Andrus v. Ellis*, 887 So. 2d 175, 181 (¶ 30) (Miss. 2004) (citations omitted).

¶11.    Here, the Rosses requested that Daniels fill the gully with the material that had been initially removed to form the gully – namely tree stumps, limbs, trunks, and the like. Daniels complied with the Rosses' request, and completed his work. After construction on the home

was finished, Daniels took no further action on the property. Indeed, there is no evidence in the record to show that Daniels committed a "subsequent affirmative act" to prevent discovery of a claim. Rather, he filled the gully with the materials that had been taken out, he completed his work on the property to the satisfaction of and at the direction of the home owners, and he left. There is nothing in the record or the briefs on appeal that indicates Daniels committed the requisite subsequent act of concealment. Rather, the Aydins assert that Daniels's "actions in burying the defective fill material [are] a subsequent affirmative act of concealment." However, this contention is misplaced.

¶12. The act itself was filling the gully with the material which had been previously taken out of the land. However, there was no subsequent act made in an effort by Daniels to conceal any purported wrongdoing. There is no evidence before us showing that Daniels attempted to mask his actions or prevent discovery of his actions. Conversely, the home owners at the time in question directed him to take the actions he took with respect to filling the gully. As such, it certainly cannot be argued that he was interested in concealing the actions from anyone since he had been directed to do so by the Rosses themselves. We cannot find fault in the circuit court's determination that fraudulent concealment was not properly pled, and thus the statute of repose was not tolled. This issue is without merit, and the circuit court's judgment is affirmed.

¶13. **THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART**

6

**WITHOUT SEPARATE WRITTEN OPINION.**