# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-02244-SCT

*JANE M. WILBOURN, AS TRUSTEE OF THE*
*JAMES G. WILBOURN IRREVOCABLE TRUST*
*v.*

*THE EQUITABLE LIFE ASSURANCE SOCIETY*
*OF THE UNITED STATES AND WILLIAM J.*
*BYRD*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2005 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD E. WILBOURN, III |
| ATTORNEYS FOR APPELLEES: | MARGARET OERTLING CUPPLES |
| | W. WAYNE DRINKWATER, JR. |
| | STEPHEN L. THOMAS |
| | JEFFREY R. BLACKWOOD |
| | JOHN ALEXANDER PURVIS |
| | DANIELLE DAIGLE IRELAND |
| | G. TODD BURWELL |
| | W. JEFFREY COLLIER |
| | WILLIAM LARRY LATHAM |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 12/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     On May 17, 2004, Jane W. Wilbourn, as Trustee of the James G. Wilbourn Irrevocable Trust ("Trust"), filed suit against Equitable Life Assurance Society of the United States ("Equitable") and its agent, William J. Byrd. The Trust's twenty-five-count complaint

sought actual and punitive damages based upon the alleged fraudulent concealment and oral misrepresentations of Equitable, through Byrd, regarding "vanishing premiums" on a whole-life insurance policy issued to the Trust in 1986. Thereafter, the Circuit Court of Quitman County, Mississippi, granted the "Motion to Dismiss" of Equitable and Byrd, based upon the statute of limitations. The circuit court concluded that "[t]he time for filing any claim arising from the alleged representations to the contrary by the Defendants started to run on the date of delivery of the policy in 1986. Thus, [the Trust's] claim filed herein over 17 years later is time[-]barred." On appeal, the Mississippi Court of Appeals deemed the statute of limitations issue to be dispositive and affirmed. *See* **Wilbourn v. Equitable Life Assur. Soc'y of the United States**, 2007 Miss. App. LEXIS 501 at *2, 14 (Miss. Ct. App. August 7, 2007). This Court subsequently granted the Trust's "Petition for Writ of Certiorari."

## FACTS[1]

¶2.     On August 7, 1986, the Trust purchased a $1,000,000 whole-life insurance policy from Equitable's agent, Byrd. The Trust's complaint states that Byrd represented that "[the Trust] would only have to pay eight years' worth of out-of-pocket premiums and thereafter the policy would sustain itself and the premiums would 'vanish.'" The policy expressly provides, "[i]nsurance payable upon death. Premiums payable for life. Policy participates in dividends." The policy further states that:

---

[1]"When considering a motion to dismiss, the allegations in the complaint must be taken as true . . . ." **Scaggs v. GPCH-GP, Inc.**, 931 So. 2d 1274, 1275 (Miss. 2006) (quoting **Lang v. Bay St. Louis/Waveland Sch. Dist.**, 764 So. 2d 1234 (Miss. 1999)). Therefore, this Court's factual summary largely incorporates the Trust's complaint and takes the allegations contained therein as true.

[t]his policy, and the attached copy of the application for this policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

Thereafter, the Trust paid $28,600 to Equitable. This complied with the policy provision that "[t]he first premium is $28,600.00 and is due on or before delivery of the policy. Subsequent premiums[2] are due on August 9, 1987 and every 12 months thereafter . . . ."

¶3.     The Trust duly made premium payments of $14,300 in each of the following six years. On July 23, 1993, the Trust received a "Notice of Payment Due" from Equitable. The Trust, believing it had completed its obligation of eight premium payments of $14,300,[3] contacted Byrd inquiring why such notice had been received. Byrd assured the Trust that one additional premium payment was needed (the eighth), but that the premiums would thereafter vanish.[4] Thereafter, the Trust made its eighth premium payment (one for $28,600; seven for $14,300).

¶4.     However, on July 27, 1994, the Trust received another "Notice of Payment Due." The Trust again made the premium payment of $14,300 and then contacted Byrd. Byrd confirmed that the Trust had fulfilled its premium obligation and promised that upon receipt

---

[2]In the amount of $14,300 annually.

[3]In fact, the Trust had made one premium payment of $28,600 and six premium payments of $14,300, for a total of seven premium payments. However, the Trust's complaint alleges that the initial payment of $28,600 "constituted two year's worth of premiums."

[4]According to the Trust's complaint, "although [the Trust's] premiums should have vanished, [the Trust] sent [Equitable] payment . . . for what its insured was told would be the ninth and final premium payment."

of a written request for a refund, the subject premium payment would be returned. Byrd further instructed the Trust to submit a form so that future premiums could be taken out of the policy's earnings. The Trust complied and subsequently received a premium refund check in the amount of $14,300 from Equitable.

¶5. On July 14, 1995, yet another "Notice of Payment Due" was received by the Trust. Once again, the Trust made the premium payment and contacted Byrd, who reiterated that the policy's premiums had vanished and were being paid from the policy earnings. Byrd added that the Trust should ignore future "Notices of Payment Due." On August 31, 1995, the Trust's uncashed check was returned by Equitable.

¶6. In 1996 and 1997, the Trust received "Notices of Payment Due" from Equitable. These notices were disregarded by the Trust based upon the aforementioned advice of Byrd. Following the 1997 "Notice of Payment Due," the Trust did not receive another "Notice of Payment Due" until 2002. During this period, the Trust believed that the policy premiums had indeed vanished as represented.

¶7. On August 9, 2002, the Trust received a statement from Equitable to remit payment for past due premiums or have the policy lapse.[5] Upon contacting Byrd, the Trust's complaint provides that it was informed:

> that the policy had not performed as expected and further premium payments would be required or the policy would lapse. However, [the Trustee] insured was also told that the Trust could pay these premiums with loans from the

---

[5]The Trust's complaint provides that "[t]he statement was not in the amount of the yearly premiums. Rather, it represented the difference between the policy's earnings and the yearly premium amount."

4

policy. [The Trust] opted to pay the amount required to keep the policy from lapsing with a loan.

According to the complaint, the Trust:

> was further told that the policy's earnings likely would again reach a level where the policy would sustain itself. Since 2002, there has continued to be a difference between the amount of the yearly premium due and the amount the policy earns. [The Trust] has made all subsequent payments of this difference through loans against the policy.

¶8. On May 17, 2004, the Trust filed a complaint in the circuit court containing twenty-five counts and alleging various torts arising out of the purported fraudulent concealment and misrepresentations regarding "vanishing premiums" of the policy. Equitable filed a "Notice of Removal" to federal court on the basis of diversity jurisdiction, claiming that Byrd was fraudulently joined in order to defeat federal jurisdiction. The United States District Court for the Northern District of Mississippi-Delta Division subsequently granted the Trust's "Motion to Remand" based on Equitable's failure to demonstrate fraudulent joinder.

¶9. Equitable and Byrd then renewed their "Motion to Dismiss" in the circuit court, arguing that the Trust's complaint was barred by the statute of limitations.[6] The circuit court granted that motion, entering an "Order of Dismissal with Prejudice" of the Trust's complaint, finding that the policy clearly stated that the premiums were payable "for life," and that "[t]he time for filing any claim arising from the alleged representations to the contrary . . . started to run on the date of delivery of the policy in 1986."

---

[6]The motion further stated that "[n]or can [the Trustee] establish that she was diligent in attempting to discover her claims, where *the clear language of the policy*, of which [the Trust] had a copy, *contradicted the alleged misrepresentations*." (Emphasis added).

¶10.    On appeal, the Court of Appeals determined that even if the circuit court's analysis was in error, a separate analysis under its interpretation of *Stephens v. Equitable Life Assurance Society of the United States*, 850 So. 2d 78 (Miss. 2003), renders the same result, as the facts and issues presented in *Stephens* are "almost identical to those presented here." *Wilbourn*, 2007 Miss. App. LEXIS 501 at *8.  In analyzing the "Motion to Dismiss" and the circuit court's "Order of Dismissal with Prejudice," the Court of Appeals looked at the express terms of the policy, identifying at least three "clear and unambiguous" points:

> [f]irst, the "Premiums and Benefits" section states that the premiums are due annually "FOR LIFE."  Second, the "Other Important Provisions" section clearly states that the written policy statement is the entire contract.  Third, only the President or one of the Vice Presidents of [Equitable] had the power to modify the contract and such modification was required to be in a signed writing.

*Id*. at *11.  Based upon the "for life" language, the Court of Appeals concluded that the Trust had failed to demonstrate "some affirmative act or conduct was done to prevent discovery of a claim . . . ."  *Id*. at *12-13 (quoting *Stephens*, 850 So. 2d at 83).  As such, the Court of Appeals found that the Trust had failed to establish a claim of fraudulent concealment, thus the statute of limitations was not tolled.  *See Wilbourn*, 2007 Miss. App. LEXIS 501 at *13. Furthermore, the Court of Appeals stated:

> it is undisputed that the Trust was required to make an additional premium payment beyond the eight allegedly promised by Byrd in July 1993. Assuming that everything that the Trust claims is true, the Trust, in accordance with *Stephens*, was put on notice of a possible misrepresentation in 1993.

6

*Id*. at \*13-14.  As such, the Court of Appeals determined that "whether the statute began to run in 1986 and expired in 1992[7] or began to run in 1993 and expired in 1996, the action is time-barred."  *Id*. at \*14.  Therefore, the Court of Appeals affirmed the circuit court's "Order of Dismissal with Prejudice" of the Trust's complaint.[8]  *See id*.

## ISSUE

¶11.    This Court will consider:

> Whether the circuit court erred in entering an "Order of Dismissal with Prejudice" of the Trust's complaint.

## ANALYSIS

¶12.    Procedurally, this Court notes that the "Motion to Dismiss" of Equitable and Byrd alleges that it was brought pursuant to Mississippi Rules of Civil Procedure 9(b) and 12(b)(6).  Rule 9(b) states, in part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Miss. R. Civ. P. 9(b).  Rule 12(b)(6) provides "the following defenses may at the option of the pleader be made by motion: . . . (6) Failure to state a claim upon which relief can be granted . . . ." Miss. R. Civ. P. 12(b)(6).  According to this Court:

> [a] motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law, which is reviewed under a de novo standard. ***Cook v. Brown***, 909 So. 2d 1075, 1077-78 (Miss. 2005).  A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint.  *Id*. at 1078 (citing ***Little v. Miss. Dep't of Human Servs.***, 835 So. 2d 9, 11 (Miss. 2002)).  The allegations in the complaint must be taken as true,

---

[7]For claims that accrued prior to July 1, 1989, Mississippi Code Annotated Section 15-1-49 imposed a six-year statute of limitations.

[8]Four judges concurring; one judge concurring in part and in result; four judges dissenting; and one judge not participating.

and there must be no set of facts that would allow the plaintiff to prevail. ***Ralph Walker, Inc. v. Gallagher***, 926 So. 2d 890, 893 (Miss. 2006). . . . This Court must find that there is no set of facts that would entitle a defendant to relief under the law in order to affirm an order granting the dismissal of a claim on a Rule 12(b)(6) motion. ***Id***. (citing ***Lowe v. Lowndes County Bldg. Inspection Dep't***, 760 So. 2d 711, 713 (Miss. 2000)).

***Rose v. Tullos***, 2008 Miss. LEXIS 573 at \*4-5 (Miss. 2008). *See also* ***State v. Dampeer***, 744 So. 2d 754, 756 (Miss. 1999) (quoting ***Weeks v. Thomas***, 662 So. 2d 581, 583 (Miss. 1995)) ("in order to survive a Rule 12(b)(6) motion, the complaint need only state a set of facts that will allow the plaintiff 'some relief in court.'").

¶13.    However, Mississippi Rule of Civil Procedure 12(b) further states that:

> [i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading* are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, *and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56*; however, if on such a motion matters outside the pleadings are not presented, and if the motion is granted, leave to amend shall be granted in accordance with Rule 15(a).

Miss. R. Civ. P. 12(b) (emphasis added). *See also* Miss. R. Civ. P. 12(c) (similar language regarding a "Motion for Judgment on the Pleadings"). The circuit court clearly considered "matters outside the pleading" in finding that "[t]he policy clearly states that premiums are payable for 'life[,]'"[9] but did not treat the "Motion to Dismiss" as a motion for summary judgment in accordance with Rule 12(b). Nonetheless, this Court has stated that "[t]he motion for summary judgment is the functional equivalent of the Rule 12(b)(6) motion to

---

[9]According to the "Motion to Dismiss," while the Trust "bases [its] case on the life insurance policy and application, [it] did not attach these documents to [its] [c]omplaint." Therefore, the subject policy was attached to the "Motion to Dismiss" as an exhibit.

8

dismiss, only it occurs at a subsequent stage of the proceedings." ***Jones v. Regency Toyota, Inc.***, 798 So. 2d 474, 475 (Miss. 2001) (quoting ***Gray v. Baker***, 485 So. 2d 306, 307 (Miss. 1986)).  In fact:

> [a] party against whom a motion to dismiss under M.R.C.P. 12(b)(6) has been filed is thereby on actual notice that the motion to dismiss may be treated as a motion for summary judgment *if the conditions prescribed in [Mississippi Rule of Civil Procedure 12(b)] are found, including the opportunity to present any relevant material*.

***Jones***, 798 So. 2d at 475 (citing ***Walton v. Bourgeois***, 512 So. 2d 698, 700 (Miss. 1987)) (emphasis added).  Here, however, the motion was not "disposed of as provided in Rule 56," nor were "all parties . . . given reasonable opportunity to present all material made pertinent to such a motion by Rule 56 . . . ."  Miss. R. Civ. P. 12(b).  Furthermore, this Court has stated that "[w]here a Rule 12(b)(6) motion is converted into one for summary judgment, . . . the trial court *must* give ten days' notice for such a hearing . . . ."  ***Jones***, 798 So. 2d at 476 (emphasis added).  *See* Miss. R. Civ. P. 56(c) ("[t]he motion shall be served at least ten days before the time fixed for the hearing.").  "The requirements of Rule 56(c), far from being a mere extension of our liberal procedure exalting substance over form, represents a procedural safeguard to prevent the unjust deprivation of a litigant's constitutional right to a jury trial." ***Jones***, 798 So. 2d at 476 (quoting ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 649 So. 2d 179, 182-84 (Miss. 1994)).  Accordingly, this Court concludes that the circuit court erred in merely entering an "Order of Dismissal with Prejudice" after considering "matters outside the pleading," but failing to properly convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment via proper notice of said hearing, *see* Miss. R. Civ. P. 56(c), or the "reasonable opportunity to present all material made pertinent to such a motion by Rule 56

9

. . . ." Miss. R. Civ. P. 12(b). Therefore, the circuit court's "Order of Dismissal with Prejudice" is vacated and this case is remanded for further proceedings consistent with this opinion.

¶14. Additionally, this Court would be remiss if it failed to include the following substantive discussion. This analysis is pertinent to the circuit court's determination on remand, insofar as it addresses the expansive analysis of the Court of Appeals regarding the policy, the representations of Byrd and Equitable, and the statute of limitations.

¶15. Initially, this Court questions the clear and unambiguous nature of the "for life" policy language upon which both the circuit court and Court of Appeals relied. The policy provides "[p]remiums payable for life. *Policy participates in dividends*." (Emphasis added). As to "How Dividends Are Paid," the policy provides "[w]e will determine your policy's share, if any, of our divisible surplus annually. It will be payable as a dividend at the end of each policy year if the policy is then in effect with all premiums duly paid." Regarding "Dividend Options," the policy states that the policyholder may choose to use dividends "to help pay any premium then due." Furthermore, under the "Additional Dividend Option Rider," the policy provides:

> [w]hile this option is in effect, no other dividend option in the policy will apply and the premiums under the policy will be due annually. On each policy anniversary:
>
> 1. The current dividend will be used to pay the annual premium then due; then

2. To the extent necessary, dividend credits[10] will be used to help pay the balance of that premium; and then

3. Any excess of that premium over the sum of the amounts obtained in items 1 and 2 above will be paid by policy loan to the extent that the policy's loan value is then sufficient.

Any balance of a premium not paid in accordance with the preceding paragraph will then be due in cash.

As the "[p]olicy participates in dividends[,]" an ambiguity exists not in the payment of premiums "for life," but in the source of such payment.

¶16.    If either the referenced "Dividend Option" or the "Additional Dividend Option Rider" is applicable to the Trust, then genuine issues of material fact exist as to whether there was any inherent conflict between the policy and the alleged representations regarding the source of premium payments.[11] Under either the referenced "Dividend Option" or the "Additional Dividend Option Rider," it is conceivable that after eight out-of-pocket annual premium payments, the policy would become self-sustaining, such that the future premium payments would "vanish."[12]    As Judge Chandler noted in his dissent, "[u]nlike *Stephens*, the representation here concerned how, not whether, further premiums were to be paid. The falsity of that representation would not have been apparent from reading the insurance

---

[10]"Dividend credits" are defined in the policy as "the sum of dividend accumulations, the cash value of dividend additions, and any dividend that has not been applied under an option." The policy adds that "[y]ou may use dividend credits toward making the policy paid-up for its Face Amount. . . . No further premiums are due on a paid-up policy."

[11]In its "Petition for Writ of Certiorari," the Trust asserts that it "specifically exercised this option to have its policy dividends pay its annual premium."

[12]Furthermore, in assessing this ambiguity, this Court notes that "ambiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company." *U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 198 (Miss. 2002).

contract which in fact provided that premiums could be paid from the policy proceeds."
*Wilbourn*, 2007 Miss. App. LEXIS 501 at *21 (Chandler, J., dissenting).

¶17.    Additionally, a genuine issue of material fact may exist regarding whether the express language of the policy was inconsistent with Byrd's 1993 statement that one additional premium payment was needed, but that the premiums would thereafter vanish.  The policy provides that "[t]he *first premium* is $28,600.00 . . . ." (Emphasis added).  Assuming that the $28,600 payment in 1986 constituted only the "first premium" payment, then the eighth out-of-pocket annual premium payment would have been made in 1993.  While the Trust was under the impression that the $28,600 payment satisfied two of the eight out-of-pocket premium payments, it is unclear if that was an actual representation made by Byrd, in direct conflict with the policy provision.  If not, then the Trust would not have been put on notice of a misrepresentation, as no misrepresentation would have existed.[13]

¶18.    Finally, a fraud claim "accrues upon the completion of the sale induced by such false representation, *or upon the consummation*[14] *of the fraud . . . ."  *Stephens*, 850 So. 2d at 82 (quoting **Dunn v. Dent**, 169 Miss. 574, 153 So. 798 (1934)) (emphasis added).  As noted *supra*, genuine issues of material fact may exist regarding whether the alleged representations regarding the source of premium payments were inconsistent with the policy.  Furthermore, in the absence of a breach of the policy, or proof of an anticipatory breach, how could the

_____

[13]According to Judge Chandler, "Byrd's promise that the policy's performance was such that the premiums would vanish in eight years was not substantially contradicted by Equitable's requirement of a single, final, out-of-pocket premium payment."  *Wilbourn*, 2007 Miss. App. LEXIS 501 at *24 (Chandler, J., dissenting).

[14]"Consummation" is defined as "[t]he act of consummating: fulfillment."  Webster's II New College Dictionary 242 (3d ed. 2001).

Trust divine that a fraud claim existed? The Trust asserts the following: in 1994 and 1995, based upon Byrd's representations, the Trust made the premium payments and then received full reimbursement from Equitable; in 1996 and 1997, the Trust received additional "Notices of Payment Due" from Equitable, ignored both based upon Byrd's representations, and no further action was taken by Equitable; for the next five years, the Trust received no "Notices of Payment Due." If these assertions are proven, how would the Trust have known to file suit if it: (1) was told by Byrd that the "Notices of Payment Due" from 1994 through 1997 were mistaken; (2) received full refund or return of the 1994 and 1995 premium payments from Equitable; (3) received "Notices of Payment Due" in 1996 and 1997, but no subsequent demand for payment from Equitable; and (4) received no "Notices of Payment Due" from Equitable after the 1997 notice until August 2002? Equitable's purported errors of commission (refunded or returned premium payment checks in 1994 and 1995) and omission ("Notices of Payment Due" in 1996 and 1997 but inaction, and the absence of "Notices of Payment Due" after the 1997 notice until August 2002) may well create a genuine issue of material fact as to whether any alleged fraud was "consummated" before August 2002.[15]

¶19. This opinion should not be read as a retreat from the principle that, absent exceptional circumstances, a fraud claim may not be predicated on false verbal representations which contradict provisions of a written contract. *See Ballard v. Commercial Bank of DeKalb*, 2008 Miss. LEXIS 500 at *15 (Miss. October 9, 2008) ("[a]s a matter of law, one may not

---

[15]Moreover, under an installment-type policy, the collection of each $14,300 premium beyond that which was agreed upon would consummate a separate and distinct act of misrepresentation, should the fact-finder conclude that any misrepresentation existed.

13

reasonably rely on oral representations, whether negligently or fraudulently made . . . , which contradict the plain language of the documents"); *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber Co., Inc.*, 584 So. 2d 1254, 1257 (Miss. 1981) ("a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract"). In the case *sub judice*, the policy provisions may not necessarily have put the Trust on notice that the verbal representations of Byrd were false in light of Equitable's refund or return of its premium payments. The policy language, together with Byrd's representations and Equitable's actions, reasonably could have been interpreted to mean that the policy had become self-sustaining such that future premium payments would "vanish."

## CONCLUSION

¶20.   Based upon the aforementioned analysis, this Court reverses the Court of Appeals' decision affirming the Circuit Court of Quitman County's "Order of Dismissal with Prejudice," and remands for further proceedings consistent with this opinion.

¶21.   **REVERSED AND REMANDED.**

   **SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR.  EASLEY, J., CONCURS IN RESULT ONLY.  GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY DIAZ, P.J.**

   **GRAVES, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶22.   The majority of this Court finds that this matter should be reversed and remanded to the circuit court for a determination of whether genuine issues of material fact exist.  While

14

I agree that this matter should be reversed and remanded, I would find that it should be remanded for trial and not for a summary judgment hearing. The majority opinion acknowledges the existence of genuine issues of material fact. Rather than remand the matter to the trial court for conversion of the Mississippi Rule of Civil Procedure 12(b) motion to dismiss into one for summary judgment pursuant to Rule 56(c), I would find that this Court should convert the motion, apply its findings of genuine issues of material fact, reverse this matter, and remand it for trial. Therefore, I concur in part and dissent in part.

¶23.   The majority is careful to point out that genuine issues of material fact "may" exist. Although the majority uses the word "may," the record in this matter indicates that genuine issues of material fact *do* exist. Moreover, the majority cites certain issues where there "may" exist genuine issues of material fact and discusses specific assertions that may be proven. The mere acknowledgment that there are these genuine issues which are unresolved is an acknowledgment that there are genuine issues which are in dispute. The appropriate vehicle for proving assertions or resolving disputed issues is a trial.

¶24.   As I would find, based on the record in this matter, that genuine issues of material fact exist, this matter should be reversed and remanded for trial. It is axiomatic that summary judgment should be denied where there are genuine issues of material fact. *See Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990). *See also* Miss. R. Civ. P. 56(c). Moreover, it does not serve the interest of judicial economy to require a hearing on a matter where this Court has already acknowledged findings. Further, inasmuch as this Court is reversing the Court of Appeals, I would find it unnecessary for the circuit court below to examine the

"expansive analysis" of the Court of Appeals decision.  Therefore, I concur in part and dissent in part.

**DIAZ, P.J., JOINS THIS OPINION.**